James BARTLEY et al., Appellants,

v.

**PIKEVILLE NATIONAL BANK & TRUST COMPANY et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 26, 1975.

Rehearing Denied March 5, 1976.

Garred O. Cline, Pikeville, for appellants.

Charles E. Lowe, Sr., Lowe & Lowe, Jean L. Auxier, Pikeville, for appellees.

STERNBERG, Justice.

This foreclosure action was instituted by the Pikeville National Bank & Trust Company to recover money due from Lucy Bartley, appellants James Bartley and Faye Bartley, his wife, appellees Herbert Lee Bartley and Annisteen Bartley, his wife, and Lookout Coal Company.

On May 20, 1960, Spairel Bartley, owner of Lookout Coal Company, and Lucy Bartley, his wife, executed a note and mortgage in the amount of $15,000 to the Pikeville National Bank & Trust Company. Shortly thereafter, Spairel Bartley died. He devised all of his estate to his widow Lucy Bartley. (On August 27, 1968, Lucy Bartley executed a renewal of the $15,000 note which was secured by the original mortgage.)

By virtue of an agreement dated April 13, 1965, Herbert Bartley and James Bartley became the sole shareholders in Lookout Coal Company.

On December 21, 1966, Lookout Coal Company, Lucy Bartley, James Bartley, Faye Bartley, Herbert Bartley, and Annisteen Bartley executed a note and mortgage in the amount of $27,000 to the Pikeville National Bank & Trust Company.

The proceeds of these two notes went to Lookout Coal Company. There was a default on the two notes, and on May 12, 1969, the Pikeville National Bank & Trust Company filed a complaint in the Pike Circuit Court against Lookout Coal Company, Lucy Bartley, James Bartley, Faye Bartley, Herbert Bartley, Annisteen Bartley, and other various secondary lienholders who are not parties to this appeal. In the complaint the bank alleged that $15,000 with interest was due on the first note and $22,378.99 with interest was due as the outstanding balance on the second note. It sought to sell several parcels to satisfy the first note and additional parcels to satisfy the debt on the second note. Some, but not all, of the parcels which secured the first note also secured the second note.

On August 4, 1969, the bank's action was consolidated with other actions against Lookout Coal Company, Herbert Bartley, and James Bartley by various other creditors. On September 15, 1969, a default judgment was entered against Lookout Coal Company and Lucy Bartley on the first note and against Lookout Coal Company, Herbert Bartley, Annisteen Bartley, James Bartley, Faye Bartley, and Lucy Bartley on the second note. After a hearing held subsequently, with appellants present, it was discovered that several tracts of land which were encumbered by either one or both of the mortgages had been transferred to third parties. Also, it was discovered that other liens which had been perfected subsequent to the mortgages had attached to the lands remaining with Lookout Coal Company, James Bartley, and Herbert Bartley. Consequently, all parties necessary to the full determination of the issues were brought before the court by amended complaints.

An order of sale was entered. The total proceeds of the sale of all of the tracts were $195,990.

After payment of each parcel's proportionate share of the two notes, interest, and costs, the court distributed the balance of the sale price of each parcel to its former owner, provided the parcel was not subject to secondary liens. The remaining proceeds were next used to fully discharge the secondary lienholders. After all liabilities were fully discharged, the court, by agreement of the parties, distributed the balance equally among the former owners of tracts which had been subject to the secondary liens.

Appellants filed a motion in the circuit court seeking to eliminate Tract 17 Lot 5 from the order of sale. This motion, along with certain exceptions to the sale which had been filed, was overruled.

On appeal Faye Bartley and her husband, James Bartley, again contend that Tract 17 Lot 5 should not have been sold since (1) only the two mortgages of Pikeville National Bank & Trust Company encumbered its title, and (2) the proceeds of the sale of tracts owned by Lookout Coal Company were sufficient to discharge liabilities on both of the notes.

The trial court applied the proceeds of the judicial sale in such a manner that each tract which was subject to one or both of the mortgages would bear its proportionate share of the debt, interest, and costs of the action.

Appellants argue that this method of distribution of the proceeds of sale was grossly inequitable for two reasons:

(1) The inverse order of alienation doctrine would preclude Tract 17 Lot 5 from being liable on the notes, and

(2) The doctrine of marshaling assets was improperly applied.

■ Briefly stated, the inverse order of alienation doctrine is that where land which is subject to a lien had been conveyed in whole or in part, the lienholder must satisfy his debt out of the land remaining in the grantor, if possible. If such remaining land is insufficient to satisfy the debt, then and in that event he must resort to separate parcels which have been conveyed successively in the inverse order of alienation. 53 Am.Jur.2d, *Marshaling Assets*, § 2. The doctrine of inverse order of alienation was specifically rejected by this court in *Bronaugh v. Burley Tobacco Co.*, 212 Ky. 680, 280 S.W. 97. We see no reason not to follow that decision.

■ The doctrine of marshaling assets requires that where two or more creditors seek satisfaction out of the assets of their common debtor, and one of them can resort to two funds where another has recourse to only one of the funds, the former creditor may be required to seek satisfaction out of the funds which the latter creditor cannot reach, before resorting to the other fund.

By this method of distribution both creditors may be paid or both funds will be exhausted. 53 Am.Jur.2d, *Marshaling Assets*, § 2.

Appellants maintain that the trial court wrongfully applied this doctrine by requiring that all of the mortgaged tracts bear a pro rata share of the liability on the notes. This contention has merit.

■ The doctrine of marshaling assets does not apply unless the litigants are creditors of the *same* debtor and both funds are in the hands of a common debtor of both creditors. 53 Am.Jur.2d, *Marshaling Assets*, § 9; *Gaines v. Hill,* 147 Ky. 445, 144 S.W. 92. That is, the litigants must be creditors of the same debtor and both funds or properties must be owned by the debtor.

■ In the instant case, one fund or group of properties is subject to the secondary tax and execution liens, as well as the mortgages, while the second fund or group of properties in the hands of different owners is subject only to the mortgages. The two funds are not owned by a common debtor. Therefore, the doctrine of marshaling assets would not be applicable in this case.

The question remains as to whether equity requires that Tract 17 Lot 5 be sold in order that the proceeds may contribute to the payment of notes which are secured by mortgages on this parcel along with others.

In the present case, Lookout Coal Company was the principal debtor on each of the two notes to Pikeville National Bank & Trust Company, since it received the proceeds of the notes. James Bartley, Faye Bartley's grantor of Tract 17 Lot 5, signed merely as an accommodating party. *Rommel Bros. v. Clark,* 255 Ky. 554, 74 S.W.2d 933.

In *Gaines v. Hill,* supra, a situation analogous to the present case existed. In that case Creditor A had a claim against two debtors, one a principal and the other a surety. Creditor B of the principal debtor attempted to compel Creditor A to exhaust

his remedy against the surety before going against the principal. The court held that Creditor B could not compel Creditor A to proceed in such a manner.

The question in the instant case is whether this court will reverse a case in which the lower court followed such a procedure.

██ Under KRS 355.3–415(2) an accommodation maker (or his successor in interest) is liable in the capacity in which he signs. However, where both the principal and accommodation party are before the court, it is inequitable to order a judicial sale of security of the accommodation party if the security of the principal is adequate to satisfy the claim of the creditor. The fact that there are secondary claims against the tracts held by Lookout Coal Company does not alter this principal. The accommodation party is not in a position of lending his name to any of these secondary obligations. It would be grossly inequitable to require him to contribute toward payment of the notes which he signed merely because the principal has incurred additional unrelated debts. While this conclusion extends the holding of *Gaines v. Hill,* supra, it is well within the spirit of that case. Thus, since James Bartley was not liable on the accommodation agreement in this case, the mortgaged property which he transferred to Faye Bartley should not have been subjected to the judicial sale.

The judgment is reversed, and the case remanded to the trial court for proceedings consistent with this opinion.

All concur.